**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

    Plaintiff/Respondent,

v.                                                       No. CIV 04-1390 LH/WPL
                                                          No. CR 00-1462 LH

ROBERTO VEGA-REY,

    Defendant/Movant.

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

This matter is before me on Roberto Vega-Rey's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody. He pleaded guilty to two counts of possession with intent to distribute less than five grams of cocaine base, one count of possession with intent to distribute five grams and more of cocaine base, and one count of conspiracy to possess with intent to distribute 50 grams and more of cocaine base. He was sentenced to 120 months' incarceration and five years' supervised release. For the reasons that follow, I recommend that Vega-Rey's motion be denied.

**PROPOSED FINDINGS**

**PROCEDURAL BACKGROUND**

On November 8, 2000, five defendants were charged with violations of drug trafficking laws, including conspiracy to possess with intent to distribute 50 grams or more of cocaine base. [Doc. 1][1] On August 9, 2001, a second superseding indictment added Vega-Rey as a defendant in the

---

[1] Docket numbers refer to the criminal case, No. CR 00-1462 LH.

conspiracy count and charged him with two counts of possession with intent to distribute less than five grams of cocaine base and one count of possession with intent to distribute five grams and more of cocaine base. [Doc. 117]

A jury was selected on September 17, 2001, and trial began on September 24, 2001. [Doc. 158, 188] On September 25, 2001, before the second day of trial began, Vega-Rey pleaded guilty to the four charges against him. [Doc. 184]

Vega-Rey was scheduled to be sentenced on October 8, 2002. At the hearing, he requested new counsel. [10/08/02 Tr. at 4-6][2] The Court granted his motion to have his counsel discharged and another attorney assigned to represent him. *Id.* at 44-45. On January 13, 2003, Vega-Rey was sentenced to 120 months' incarceration and five years' supervised release. [Doc. 302]

Vega-Rey appealed his sentence. *United States v. Vega-Rey*, 75 F. App'x 749, 750 (10th Cir. 2003) (unpublished decision). On September 25, 2003, the Tenth Circuit affirmed. *Id.* at 751.

On December 13, 2004, Vega-Rey filed a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody. [Doc. 324] Plaintiff filed a response to the motion [Doc. 331] and Vega-Rey filed a reply [Doc. 334]. The presiding judge then referred this matter to me to recommend an ultimate disposition of the case. [Doc. 337]

## STANDARDS OF REVIEW

A petition under 28 U.S.C. § 2255 attacks the legality of a federal prisoner's detention. *Bradshaw v. Story*, 86 F.3d 164, 166 (10th Cir. 1996). Under § 2255, a federal prisoner "may move the court which imposed the sentence to vacate, set aside or correct the sentence" if "the sentence was imposed in violation of the Constitution or laws of the United States, or [] the court was without

---

[2] References to the hearing held on October 8, 2002 are cited as "[10/08/02 Tr. at __]."

jurisdiction to impose such sentence, or [] the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255.

Section 2255 motions are not available to test the legality of matters that should have been raised on direct appeal. *United States v. Warner*, 23 F.3d 287, 291 (10th Cir. 1994). Failure to present an issue on direct appeal bars a petitioner from raising that issue in his § 2255 motion, unless he can show cause excusing his procedural default and actual prejudice resulting from the errors of which he complains, or can show that a fundamental miscarriage of justice will occur if his claim is not addressed. *Id.* A petitioner may not bring a claim under § 2255 that was considered and disposed of on direct appeal. *Id.*

Because Vega-Rey is proceeding *pro se*, I will construe his pleadings liberally. *See Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (citing *Haines v. Kerner*, 404 U.S. 519 (1972)). This broad reading of a *pro se* litigant's pleadings does not, however, relieve him of the burden of alleging sufficient facts upon which a legal claim may be based. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). A court is not required to fashion a *pro se* litigant's arguments for him where his allegations are conclusory and lack supporting factual averments. *United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994) (citing *Hall*, 935 F.2d at 1110).

### INEFFECTIVE ASSISTANCE OF COUNSEL

Vega-Rey asserts that his counsel was ineffective for failing to object to the presentence report and request a hearing regarding eligibility for safety valve relief, giving him advice that contradicted the safety valve provision, failing to object to a Rule 11 violation, and failing to adequately investigate and advise him regarding his case.

*Legal Standards*

Collateral attacks on guilty pleas are generally prohibited. *See Tollett v. Henderson*, 411 U.S. 258, 267 (1973). If a defendant has pleaded guilty, the only non-jurisdictional avenue to challenge his conviction is to claim that the plea was not knowing and voluntary. *Romero v. Tansy*, 46 F.3d 1024, 1033 (10th Cir. 1995). "Performance by defense counsel that is constitutionally inadequate can render a plea involuntary." *Id.*

To establish ineffective assistance of counsel, a habeas petitioner must satisfy a two-part test. First, he must show that counsel's performance fell below an objective standard of reasonableness. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). Judicial scrutiny of counsel's performance is highly deferential; thus, the petitioner must overcome the presumption that the challenged action might be considered sound trial strategy. *Id.* at 689. Second, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id*.

"In the guilty plea context, to establish a claim for ineffective assistance of counsel, a defendant must show that counsel's performance fell below an objective standard of reasonableness and that, but for counsel's error, the defendant would have insisted upon going to trial." *United States v. Silva*, 430 F.3d 1096, 1099 (10th Cir. 2005) (citing *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985)). The court should consider the factual circumstances surrounding the guilty plea, and "the assessment of whether he would have changed his plea depends in large part on a prediction of whether the outcome of the district court proceedings would have been different if his counsel had not committed the alleged errors." *United States v. Clingman*, 288 F.3d 1183, 1186 (10th Cir.

2002); *see Hill*, 474 U.S. at 59. "A defendant making an ineffectiveness claim on a counseled guilty plea must identify particular acts and omissions of counsel tending to prove that counsel's advice was not within the wide range of professional competence." *Moore v. United States*, 950 F.2d 656, 660 (10th Cir. 1991).

### *Safety Valve Relief*

Plaintiff argues that Vega-Rey is barred from raising the issue of safety valve relief because it was considered and disposed of on direct appeal. [Doc. 331 at 9] However, Vega-Rey brings a claim of ineffective assistance of counsel, which should ordinarily be raised on collateral review. *See United States v. Galloway*, 56 F.3d 1239, 1240-41 (10th Cir. 1995) (en banc) ("Ineffective assistance of counsel claims should be brought in collateral proceedings . . . . Such claims brought on direct appeal are presumptively dismissible, and virtually all will be dismissed."); *see United States v. Cobos*, 92 F. App'x 650, 656 (10th Cir. 2004) (unpublished decision) (refusing to consider on direct appeal a claim that counsel were ineffective because they failed to object to the presentence report). Since Vega-Rey claims ineffective assistance of counsel, I will consider his claims.

Vega-Rey first asserts that his counsel was ineffective for failing to object to the presentence report regarding eligibility for safety valve relief. [Doc. 324 at 13-17] The Tenth Circuit determined on direct appeal that Vega-Rey had not provided evidence that he met the requirements for safety valve relief. *Vega-Rey*, 75 F. App'x at 751. The court noted that "the district court thoroughly queried Appellant about whether he wanted to debrief, and Appellant indicated that he did not wish to do so." *Id.* Vega-Rey has not shown that the outcome of the proceeding would have been different had his counsel objected to the presentence report, given Vega-Rey's indications that he did not want to debrief.

Vega-Rey also contends that his counsel should have requested an evidentiary hearing on the finding in the presentence report that he had not met the requirements for safety valve relief. [Doc. 324 at 13-17] However, an evidentiary hearing was not necessary given Vega-Rey's statement that he did not want to debrief. Even if counsel was deficient in not requesting an evidentiary hearing, Vega-Rey has not demonstrated a reasonable probability of a different outcome had counsel requested an evidentiary hearing.

Vega-Rey argues that his counsel gave him advice that contradicted the safety valve provision. *Id.* at 18-22. The safety valve provision requires that the defendant truthfully provide all the information he has regarding the offense or offenses that were part of the same common scheme or plan. U.S. SENTENCING GUIDELINES MANUAL § 5C1.2(a)(5). The provision also states that "the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement." *Id.*

Vega-Rey points to counsel's statement that "[Vega-Rey] would need to provide more information and adequate information to help the government." [Doc. 324 at 18; 01/13/03 Tr. at 7][3] He argues that counsel confused § 5C1.2(a)(5) with § 5K1.1, which allows the court to depart from the guidelines if "the government stat[es] that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense." U.S. SENTENCING GUIDELINES MANUAL § 5K1.1. Counsel's statement that Vega-Rey would have to provide "more information and adequate information to help the government" appears to refer to the requirement in § 5C1.2(a)(5) that Vega-Rey truthfully provide all of the information he had. Counsel made no

---

[3] References to the hearing held on January 13, 2003 are cited as "[01/13/03 Tr. at __]."

6

reference to the language in § 5K1.1. There is no basis for finding that Vega-Rey's counsel confused these two provisions. Vega-Rey has not demonstrated that he received erroneous advice regarding the requirements of the safety valve provision.

### *Failure to Object to Rule 11 Violation*

Vega-Rey argues that counsel was ineffective for failing to contemporaneously object to the trial court's violation of Rule 11 of the Federal Rules of Criminal Procedure. [Doc. 324 at 12, 23-25] He argues that there was an insufficient factual basis to demonstrate that he was guilty. *Id.*; *see* FED. R. CRIM. P. 11(f).

Acceptance of a guilty plea without full compliance with Rule 11 requires that the guilty plea be vacated. *United States v. Keiswetter*, 866 F.2d 1301, 1302 (10th Cir. 1989) (en banc). However, a court need not vacate the guilty plea unless the alleged error affected the defendant's substantive rights. *See United States v. Barry*, 895 F.2d 702, 704 (10th Cir. 1990) (citing FED. R. CRIM. P. 11(h) ("Any variance from the procedures required by this rule which does not affect substantial rights shall be disregarded.")). To demonstrate that the Rule 11 violation affected his substantive rights, the defendant must show that knowledge of the court's variance from Rule 11 would have changed his decision to plead guilty. *United States v. Wright*, 930 F.2d 808, 810 (10th Cir. 1991). By conducting a Rule 11 plea colloquy, the sentencing judge ensures that the defendant knows and understands, and knowingly and voluntarily waives, his statutory and constitutional rights. *United States v. Buonocore*, 416 F.3d 1124, 1139 (10th Cir. 2005). Rule 11 requires that the court inform the defendant of and ensure that he understands his trial rights, his waiver of those rights if he pleads guilty, the nature of the charges against him, and possible punishments. FED. R. CRIM. P. 11(b)(1). The court must address the defendant personally in open court and ensure that his plea is voluntary.

*Id.* 11(b)(2). It must also determine that there is a factual basis for the plea. *Id.* 11(b)(3). The court must assess whether the defendant fully understands the consequences of the plea. *United States v. Williams*, 919 F.2d 1451, 1456 (10th Cir. 1990).

The Court addressed Vega-Rey in open court during the plea hearing. [*See* Plea Tr.][4] Vega-Rey agreed to tell the Court if he did not understand any question asked of him. *Id.* at 4. Vega-Rey responded in the affirmative when asked whether he had been read the second superseding indictment in Spanish, whether he had discussed it with his counsel and was satisfied with the explanations, and whether he understood all of the charges. *Id.* at 5. The Court asked him whether he understood all of the charges and whether he was fully satisfied with his representation. *Id.* The Court satisfied itself that Vega-Rey understood the maximum penalties. *Id.* at 6. It ensured that no one had made promises or threats to get Vega-Rey to plead guilty and that Vega-Rey understood guideline sentencing. *Id.* at 7-8. Vega-Rey was asked whether he had discussed guideline sentencing with his counsel, and he did not have any questions about guideline sentencing when asked by the Court. *Id.* at 8, 9. He was also asked whether he understood the consequences of pleading guilty and the rights that he was giving up by doing so. *Id.* at 9-11. He responded affirmatively to all of these questions. *Id.* at 8-11. The factual basis for the plea was demonstrated during the first day of trial and when the prosecutor summarized at the plea hearing additional evidence that the government would present. *Id.* at 11-12. Since there was no violation of Rule 11, Vega-Rey's counsel did not render ineffective assistance by failing to object to a Rule 11 violation.

### *Failure to Investigate and Advise*

Vega-Rey argues that his plea was not knowing and voluntary because his counsel failed to

---

[4] References to the plea hearing held on September 25, 2001 are cited as "[Plea Tr. at __]."

investigate adequately. [Doc. 324 at 26-29]. Where a defendant alleges that his counsel failed to investigate adequately the charges to which he pleaded guilty, he must show what the investigation would have uncovered and how that would have altered his decision to plead guilty. *See Romero*, 46 F.3d at 1033.

Vega-Rey has not identified what further investigation would have revealed or how any information discovered would have affected his decision to plead guilty. Assuming that his counsel was ineffective in failing to investigate adequately, Vega-Rey has not demonstrated a reasonable probability that, but for this error, he would not have pleaded guilty and would have insisted on proceeding with his trial.

Vega-Rey also argues that his counsel did not adequately advise him and ensure that he understood the documents that counsel sent him for review. [Doc. 324 at 27-28] He does not allege that he ever requested a translation of any documents. *See U.S. v. Martinez*, 120 F. Supp. 2d 509, 514-15 (W.D. Pa. 2000); *cf. Valladares v. United States*, 871 F.2d 1564, 1566 (11th Cir. 1989) ("To allow a defendant to remain silent throughout the trial and then, upon being found guilty, to assert a claim of inadequate translation would be an open invitation to abuse."). Vega-Rey has not demonstrated a reasonable probability that, but for counsel's error, he would have insisted on proceeding with his trial.

### INVOLUNTARY PLEA

Vega-Rey claims that his plea was not knowing and voluntary. [Doc. 324 at 30-33] He argues that he does not understand English and that his "literacy in Spanish is rudimentary." *Id.* at 31. He contends that "neither the court nor his attorney explained the consequences he faced in terms he could understand." *Id.* at 32 (emphasis omitted).

As noted above, the Court fully complied with Rule 11 and ensured that Vega-Rey's plea was knowing and voluntary. Vega-Rey was provided with an interpreter, and he stated that he had studied English. [Doc. 184; Plea Tr. at 4] He stated that he understood the charges against him, the maximum penalties, guideline sentencing, and the consequences of pleading guilty. [Plea Tr. at 4-11] "Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). Vega-Rey has failed to show that his plea was not knowing and voluntary.

### EVIDENTIARY HEARING

In habeas proceedings, a district court must conduct an evidentiary hearing "[u]nless the motion and files and records of the case conclusively show that the prisoner is entitled to no relief." *United States v. Lopez*, 100 F.3d 113, 119 (10th Cir. 1996) (quotation and citation omitted). I need not conduct an evidentiary hearing because the motion and files and records conclusively demonstrate that Vega-Rey is entitled to no relief.

### RECOMMENDED DISPOSITION

For the reasons stated herein, I recommend that Vega-Rey's § 2255 motion [Doc. 87] be DENIED.

**THE PARTIES ARE NOTIFIED THAT WITHIN 10 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636 (b)(1). **A party must file any objections with the Clerk of the District Court within the ten day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

WILLIAM P. LYNCH
UNITED STATES MAGISTRATE JUDGE

Briefs and Other Related Documents

This case was not selected for publication in the Federal Reporter.Please use FIND to look at the applicable circuit court rule before citing this opinion. Tenth Circuit Rule 36.3. (FIND CTA10 Rule 36.3.)

United States Court of Appeals,Tenth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Roberto VEGA-REY, also known as Robertico Vega, Defendant-Appellant.

**No. 03-2034.**

Sept. 25, 2003.

Defendant was convicted, upon guilty plea, in the United States District Court for the District of New Mexico for various drug offenses. Defendant appealed, challenging his sentence. The Court of Appeals, McKay, Circuit Judge, held that: (1) defendant was not entitled to safety valve sentencing reduction, and (2) District Court was not required to make specific findings regarding defendant's eligibility for safety valve sentencing reduction.

Affirmed.

West Headnotes

**[1] Controlled Substances 96H 100(9)**

96H Controlled Substances
    96HIII Prosecutions
        96Hk100 Sentence and Punishment
            96Hk100(3) Exceptions to Statutory Minimums; "Safety Valve"
                96Hk100(9) k. Cooperation and Disclosure. Most Cited Cases
Defendant convicted, upon guilty plea, for various drug offenses was not entitled to sentencing reduction under safety valve statute, where defendant failed to comply with statutory requirement that he disclose all information and evidence he possessed concerning his offenses. 18 U.S.C.A. § 3553(f).

**[2] Controlled Substances 96H 100(4)**

96H Controlled Substances
    96HIII Prosecutions
        96Hk100 Sentence and Punishment
            96Hk100(3) Exceptions to Statutory Minimums; "Safety Valve"
                96Hk100(4) k. In General. Most Cited Cases

**Controlled Substances 96H 100(9)**

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

96H Controlled Substances
    96HIII Prosecutions
        96Hk100 Sentence and Punishment
            96Hk100(3) Exceptions to Statutory Minimums; "Safety Valve"
                96Hk100(9) k. Cooperation and Disclosure. Most Cited Cases

District Court was not required to make specific findings regarding defendant's eligibility for a safety valve sentencing reduction, where defendant failed to object to the factual findings in the presentence investigation report (PSR) regarding his ineligibility, defendant did not indicate at any time during the sentencing hearing that he wished the court to make a finding on the safety valve elements, and defendant indicated that he did not wish to comply with the full disclosure requirement for a safety valve reduction. 18 U.S.C.A. § 3553(f).

**\*750** David C. Iglesias, U.S. Attorney, Office of the United States Attorney, Albuquerque, NM, Kelly H. Burnham, Terri J. Abernathy, Office of the United States Attorney, Las Cruces, NM, for Plaintiff-Appellee.

Mario A.R. Carreon, Las Cruces, NM, for Defendant-Appellant.

Before TACHA, Chief Circuit Judge, McKAY and McCONNELL, Circuit Judges.

**ORDER AND JUDGMENT**

FN\* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

McKAY, Circuit Judge.
**\*\*1** After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. See Fed. R.App. P. 34(f). The case is therefore submitted without oral argument.

Mr. Vega-Rey was charged by second superceding indictment filed in the United States District Court for the District of New Mexico with one count of Conspiracy to Possess with Intent to Distribute 50 Grams or More of a Mixture Containing Cocaine Base, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A), two counts of Possession with Intent to Distribute Less Than 5 Grams of a Mixture Containing Cocaine Base, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C), and one count of Possession with Intent to Distribute More Than 5 Grams of a Mixture Containing Cocaine Base, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B). Before the second day of trial began, Appellant pled guilty to all four charges against him. On the day Appellant was scheduled for sentencing, Appellant requested a new attorney. The request was granted and sentencing was continued. Sentencing was continued four different times. The trial court subsequently sentenced Appellant to a term of 120 months of incarceration to be followed by five months of supervised release.

On appeal, Appellant claims that the district court sentenced him in violation of the law or contrary to the Guidelines because the court did not make a factual finding as to whether Appellant complied with the safety valve provision set forth in 18 U.S.C. § 3553(f) and U.S.S.G. § 5C1.2. **\*751** We review the district court's decision not to apply 18 U.S.C. § 3553(f)'s safety valve provision for clear error. *United States v. Roman-Zarate,* 115 F.3d 778, 784 (10th Cir.1997). Section 3553(f) provides that, in cases involving an offense under the Controlled Substances Act, the district court "shall impose a sentence ... without regard to any statutory minimum sentence if the court finds at sentencing" that the defendant meets the five listed criteria. *Id.*

    FN1. The five 18 U.S.C. § 3553(f) factors are:
    (1) the defendant does not have more than 1 criminal history point, as determined under the sentencing guidelines; (2) the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense; (3) the offense did not result in death or serious bodily injury to any person; (4) the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in section 408 of the Controlled Substances Act; and (5) not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a

determination by the court that the defendant has complied with this requirement.

After reviewing the record and the briefs, we conclude that the district court did not clearly err. It is undisputed that Appellant did not participate in a debriefing with the Government revealing all evidence and information concerning his offense as required by § 3553(f). Rec., Vol. IV, at 4-10. At sentencing, Appellant's counsel conceded that Appellant had not complied with the disclosure requirement and did not seek to cure the deficiency. Counsel for the Government specifically requested that the district court query Appellant to see if he wanted to debrief or not. Appellant stated that he did not wish to debrief. Additionally, Government's counsel stated that "I just want it to be on record that it has been explained to him what safety valve is about and that he hasn't taken advantage of it." *Id.* at 9. In response, Appellant's counsel stated that "if he were to debrief again, I don't think he could provide any information to change things." *Id.*

**\*\*2** [1][2] Since Appellant did not present evidence at sentencing that he had complied with the safety valve requirements set forth in 18 U.S.C. § 3553(f), the district court was required to impose the mandatory minimum sentence of 120 months. The district court was not required to make specific findings regarding Appellant's eligibility because Appellant failed to object to the factual findings in the Presentence Report regarding his eligibility for safety valve relief. *Id.* at 14. Appellant also did not indicate at any time during the sentencing hearing that he wished the court to make a finding on the safety valve elements. Additionally, the district court thoroughly queried Appellant about whether he wanted to debrief, and Appellant indicated that he did not wish to do so. Appellant did not lodge an objection at any point and indicated that he wished to proceed to sentencing with full knowledge that the district court did not have the power to go below 120 months. There is no basis in the record for Appellant's claim of error.

For the reasons stated herein, the case is AFFIRMED.

C.A.10 (N.M.),2003.
U.S. v. Vega-Rey
75 Fed.Appx. 749, 2003 WL 22211615 (C.A.10 (N.M.))

Briefs and Other Related Documents (Back to top)

• 2003 WL 23334348 (Appellate Brief) Appellee's Answer Brief (Jul. 02, 2003) Original Image of this Document (PDF)
• 2003 WL 23334349 (Appellate Brief) Appellant's Opening Brief (May. 05, 2003) Original Image of this Document with Appendix (PDF)
• 03-2034 (Docket) (Jan. 30, 2003)

END OF DOCUMENT

Briefs and Other Related Documents

This case was not selected for publication in the Federal Reporter.Please use FIND to look at the applicable circuit court rule before citing this opinion. Tenth Circuit Rule 36.3. (FIND CTA10 Rule 36.3.)

United States Court of Appeals,Tenth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Joe COBOS, Defendant-Appellant.
United States of America, Plaintiff-Appellee,
v.
Arturo Natera, Defendant-Appellant.
**Nos. 02-2222, 02-2237.**

Feb. 17, 2004.

**Background:** Defendant were each convicted, by a jury in the United States District Court for the District of New Mexico, of conspiracy to possess with intent to distribute methamphetamine, marijuana, and cocaine, and manufacturing methamphetamine within one thousand feet of a school, first defendant was also convicted of possession with intent to distribute marijuana, and second defendant was also convicted of possession with intent to distribute methamphetamine. Defendants appealed, and their attorneys filed *Anders* briefs and moved to withdraw. Appeals were consolidated for review.

**Holdings:** The Court of Appeals, Hartz, Circuit Judge, held that

1(1) 30-year sentences did not violate *Apprendi*, and

2(2) evidence was sufficient to support convictions for manufacturing methamphetamine within one thousand feet of a school.

Affirmed, and motion to withdraw granted.

West Headnotes

**[1] Jury 230 34(1)**

230 Jury
   230II Right to Trial by Jury
      230k30 Denial or Infringement of Right
         230k34 Restriction or Invasion of Functions of Jury
            230k34(1) k. In General. Most Cited Cases

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**Sentencing and Punishment 350H 322**

350H Sentencing and Punishment
    350HII Sentencing Proceedings in General
        350HII(F) Evidence
            350Hk322 k. Degree of Proof. Most Cited Cases

Imposition of 30-year sentences, in convictions for conspiracy and possession with intent to distribute methamphetamine, marijuana, and cocaine, and manufacturing methamphetamine within 1000 feet of a school, did not violate *Apprendi*; sentences were not in excess of the statutory maximums for the offenses. Comprehensive Drug Abuse Prevention and Control Act of 1970, § § 401(a)(1), (b)(1)(A-C), 406, 416(a)(2), 419(a), as amended, 21 U.S.C.A. § § 841(a)(1), (b)(1)(A-C), 846, 856(a)(2), 860(a).

**[2] Controlled Substances 96H 77**

96H Controlled Substances
    96HIII Prosecutions
        96Hk70 Weight and Sufficiency of Evidence
            96Hk77 k. Manufacture. Most Cited Cases

Evidence was sufficient to support convictions for manufacturing methamphetamine within one thousand feet of a school; a witness testified that the defendants knew he used a trailer parked outside the house he rented to manufacture methamphetamine, and a police officer testified to having used a roll-a-tape device to measure the distance from the trailer to a school as approximately 628 feet. Comprehensive Drug Abuse Prevention and Control Act of 1970, § § 416(a)(2), 419(a), as amended, 21 U.S.C.A. § § 856(a)(2), 860(a).

**[3] Criminal Law 110 1134(3)**

110 Criminal Law
    110XXIV Review
        110XXIV(L) Scope of Review in General
            110k1134 Scope and Extent in General
                110k1134(3) k. Questions Considered in General. Most Cited Cases

Court of Appeals, on direct appeal of convictions for a number of drug offenses, would not consider claims of ineffective assistance of counsel based on failure to object to presentence report (PSR). U.S.C.A. Const.Amend. 6.

**\*651** David N. Williams, Asst. U.S. Attorney, David C. Iglesias, U.S. Attorney, Office of the United States Attorney, Albuquerque, NM, Renee L. Camacho, Office of the United States Attorney, Las Cruces, NM, for Plaintiff-Appellee.

Jason Bowles, Sharp & Jarmie, Leo C. Kelly, Albuquerque, NM, for Defendant-Appellant.

Before EBEL, ANDERSON, and HARTZ, Circuit Judges.

**ORDER AND JUDGMENT**

FN\* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.HARRIS L. HARTZ, Circuit Judge.

**\*\*1** This Order and Judgment consolidates for disposition the appeals in *United States v. Cobos,* No. 02-2222, and *United States v. \*652 Arturo Natera,* No. 02-2237. After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of either appeal. See Fed. R.App. P. 34(a)(2); 10th Cir. R. 34.1(G). The cases are therefore ordered submitted without oral argument.

Defendants Arturo Natera (Arturo) and Joe Cobos (Cobos) were arrested for their participation in a drug-distribution conspiracy and charged in a fifteen-count indictment along with twelve other individuals. They were convicted after a jury trial on charges of (1) conspiracy to possess with intent to distribute methamphetamine, marijuana, and cocaine, and (2) manufacturing methamphetamine within one thousand feet of a school. In addition, Arturo was convicted of possession with intent to distribute less than fifty kilograms of marijuana, and Cobos was convicted of possession with intent to distribute less than fifty grams of methamphetamine. Arturo was sentenced to imprisonment of 360 months on the first two charges and sixty months on the third. Cobos was sentenced to imprisonment of 360 months on the first two charges and 240 months on the third.

Defendants' appeals raise the same three arguments: (1) that they are entitled to resentencing under *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000); (2) that there was insufficient evidence to convict them of manufacturing methamphetamine within one thousand feet of a school; and (3) that they received ineffective assistance from their respective trial attorneys. We exercise jurisdiction under 28 U.S.C. § 1291 and affirm in each case.

**I. BACKGROUND**

**A. Underlying Facts**

Arturo was the head of a drug trafficking conspiracy based in Roswell, New Mexico, from 1997 until October of 2000. Four members of the conspiracy-among other witnesses-testified against him at trial. Abel Juaregi, Arturo's partner in a car sales lot, testified about Arturo's involvement in bringing large quantities of marijuana, cocaine, and methamphetamine to Roswell. Jeannine Sena, Arturo's girlfriend, testified about accompanying him to Texas to pick up cocaine and to Mexico to purchase marijuana. Leta Quesada, Jeannine's mother and a veteran narcotics transporter, testified about obtaining two kilograms of cocaine and 80 pounds of marijuana for Arturo. James Bruce Henry (Henry), a methamphetamine cook, testified that he manufactured methamphetamine for Arturo and his brother, Marcos Natera (Marcos).

Cobos was involved in Arturo's drug distribution scheme. Juaregi testified that he would purchase drugs from Cobos when Arturo had none to sell him. He also testified that Cobos was Arturo's primary conduit for selling illegal drugs. Cobos, he said, ran Arturo's drug trafficking operation while Arturo was in prison.

In April of 2000, Marcos was arrested after police in Tennessee found marijuana hidden in a pickup truck he was driving. While in jail awaiting release on bond, Marcos met Henry, who was charged with manufacturing methamphetamine. Marcos told him that he was looking for a methamphetamine cook, and Henry volunteered to return to Roswell with him. Upon arriving in Roswell, Henry and his girlfriend stayed at Marcos's apartment, and then moved into a house at 1418 East Tilden Street, which was owned by Arturo. The house was within 1000 feet of Mesa Middle School.

**\*\*2** Henry manufactured methamphetamine in the house's garage for three to four **\*653** weeks, but wished to move the operation in anticipation of having his children join him in Roswell. Marcos suggested moving the methamphetamine lab to the countryside, and Cobos told them that he had a travel trailer that they could use. Cobos and Henry retrieved the trailer, but rather than moving the operation outside of Roswell, the trailer remained adjacent to the Tilden Street house until Henry's arrest. Henry never lived in the trailer and used it only for manufacturing methamphetamine.

By Henry's estimates, he manufactured four or five pounds of methamphetamine while residing at the Tilden Street house. He testified that he supplied methamphetamine to Defendants for their personal use, and also that he gave Cobos methamphetamine to "get rid of" for him. In addition, Henry testified that Arturo gave him $500 to purchase pseudoephedrine pills for use in the manufacture of methamphetamine, and that he gave Arturo two ounces of methamphetamine in return. According to Henry, he also gave Arturo an ounce of methamphetamine in lieu of paying rent on the house.

As discussed in *United States v. Ramirez,* 348 F.3d 1175, 1178 (10th Cir.2003), the conspiracy ultimately attracted the attention of state and federal law enforcement agencies in late 1999 and early 2000. Their investigation included the use of undercover agents and wiretaps on two of Arturo's cellular telephones. On October 27, 2000, a federal grand jury handed down a fifteen-count indictment charging Defendants and twelve others with conspiracy and other drug offenses.

### B. Proceedings Below

Four counts of the indictment are relevant to these appeals. In Count I Defendants and others were charged with conspiring, in violation of 21 U.S.C. § 846, to commit the following crimes:
Possession with intent to distribute 50 grams and more of methamphetamine ... contrary to 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 841(b)(1)(A); possession with intent to distribute 100 kilograms and more of marijuana ... contrary to 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 841(b)(1)(B); and possession with intent to distribute less than 500 grams of cocaine ... contrary to 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 841(b)(1)(C).

R., Vol. I, Doc. 31 at 2. Count II charged Arturo, Cobos, and Marcos with "knowingly and intentionally mak[ing] a building or enclosure available for the purpose of unlawfully manufacturing a controlled substance within 1000 feet of a school." R., Vol. I., Doc. 31 at 6. Count IX charged Cobos with "possess[ion] with intent to distribute less than 50 grams of a mixture and substance containing a detectable amount of methamphetamine, its Salts, isomers, and Salts of its isomers...." R., Vol. I, Doc. 31 at 9. Count XIV charged Arturo, among others, with "possess[ion] with intent to distribute less than 50 kilograms of Marijuana...." R., Vol. I, Doc. 31 at 11.

**\*\*3** The jury convicted Defendants on all counts. On a special verdict form, the jury found that the objectives of the conspiracy to which Defendants agreed involved methamphetamine, marijuana, and cocaine. As to Arturo, it found that the amount of methamphetamine and marijuana "involved in the scope of the conspiracy" included: "50 grams and more (pure methamphetamine)," and "100 kilograms and more" marijuana. R., Vol. I, Doc. 319 at 2. As to Cobos, it found that the conspiracy involved "[l]ess than 50 grams, but more than 5 grams (pure

methamphetamine)," and "[a]t least 50 kilograms, but less than 100 kilograms" marijuana. *Id.* at 8. Defendants were sentenced to 360 months' imprisonment on Counts I and II. Arturo received 60 months' imprisonment on ***654** Count XIV, and Cobos received 240 months' imprisonment on Count IX.

Defendants timely appealed. Their respective attorneys filed briefs in accordance with *Anders v. California,* 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), asserting that after reviewing the record, they could discern no meritorious basis for appeal. Defendants subsequently filed pro se appellate briefs, and the United States, upon the order of this Court, responded. Cobos then filed a reply brief.

## II. ANALYSIS

### A. Apprendi

[1] Defendants contend that the district court's imposition of 360-month sentences for their convictions on Counts I and II was unconstitutional under *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). Neither of them, however, raised such an argument before the district court. Therefore, we review for plain error the sentences that the district court imposed. Under this standard, Defendants must demonstrate: "(1) an error; (2) that is plain or obvious; (3) that affects substantial rights; and (4) that seriously affects the fairness, integrity or public reputation of judicial proceedings." *United States v. James,* 257 F.3d 1173, 1182 (10th Cir.2001). Although "we apply this rule less rigidly when reviewing a potential constitutional error," *id.,* we can find no *Apprendi* violation here.

Defendants may assert a claim under *Apprendi* only if the district court imposed a sentence in excess of the statutory maximum for the offense of which they were convicted. *See, e.g., United States v. O'Flanagan,* 339 F.3d 1229, 1232 n. 2 (10th Cir.2003). This was not the case here. As to Count I, the jury found Defendants guilty under 21 U.S.C. § 846 of conspiring to possess with intent to distribute methamphetamine, marijuana, and cocaine, in violation of 21 U.S.C. § 841(a)(1). According to 21 U.S.C. § 846, "Any person who ... conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the ... conspiracy." The jury returned special verdict forms finding that possession with intent to distribute methamphetamine, marijuana, and cocaine were objects of the conspiracy. The jury also found by special verdict that as to Arturo, the conspiracy involved "50 grams and more (pure methamphetamine)," R., Vol. I, Doc. 319 at 2, and as to Cobos, the conspiracy involved "[l]ess than 50 grams, but more than 5 grams (pure methamphetamine)," *id.* at 8. Hence, as to the methamphetamine alone, Arturo faced a sentence as severe as life imprisonment, *see* 21 U.S.C. § 841(b)(1)(A)(viii), and Cobos faced as much as forty years' imprisonment, *see* 21 U.S.C. § 841(b)(1)(B)(viii).

**\*\*4** As to Count II, the jury convicted Defendants of violating 21 U.S.C. § § 856(a)(2) and 860(a). Section 856(a)(2) makes it unlawful to:

manage or control any place, whether permanently or temporarily, either as an owner, lessee, agent, employee, occupant, or mortgagee, and knowingly and intentionally rent, lease, profit from, or make available for use, with or without compensation, the place for the purpose of unlawfully manufacturing, storing, distributing, or using a controlled substance.

Their sentences were enhanced under Section 860(a), which provides:Any person who violates ... section 856 of this title by ... manufacturing a controlled substance in or on, or within one thousand feet of, the real property comprising a public or private elementary, vocational, or secondary school ... is **\*655** ... subject to (1) *twice the maximum punishment authorized by section 841(b)* of this title....

(emphasis added). Even under 21 U.S.C. § 841(b)(1)(C), which provides the most lenient sentence for the manufacture of a schedule II controlled substance such as methamphetamine, Defendants were eligible for a sentence of 20 years' imprisonment. Once this sentence is doubled under 21 U.S.C. § 860(a), Defendants faced up to forty years' imprisonment.

Thus, the district court did not err, let alone plainly err, under *Apprendi* by imposing sentences (30 years) well within the statutory range for each conviction.

### B. Sufficiency of Evidence

[2] Defendants contend that the district court improperly denied their motions for judgment of acquittal on Count II of the indictment because the government presented insufficient evidence to convict them of making available a building or enclosure for the manufacture of methamphetamine within 1000 feet of a school. Specifically, Defendants contend that the government did not prove beyond a reasonable doubt (1) that they knew that Bruce Henry used the travel trailer to manufacture methamphetamine; (2) that Henry produced 50 grams or more of methamphetamine in the trailer; or (3) that the trailer was within 1000 feet of a school.

"We review de novo the district court's denial of a motion for a judgment of acquittal," viewing "all the evidence in the light most favorable to the government." *United States v. Ramirez,* 348 F.3d at 1180 (internal quotation marks omitted). "We must determine whether there is evidence from which a jury could find the defendant guilty beyond a reasonable doubt," but "[w]e do not ... weigh the evidence or consider the credibility of the witnesses in making our determination." *Id.* (internal quotation marks and brackets omitted).

Defendants' arguments are without merit. As for Defendants' knowledge that the trailer was used for the manufacture of methamphetamine, Henry testified that because his children were to join him in Roswell at the Tilden Street house, he discussed with Marcos the possibility of moving the manufacturing operation. Marcos suggested getting a piece of land in the country. Cobos, who was present during this discussion, volunteered a travel trailer and later took Henry to retrieve it. But rather than setting up the trailer somewhere in the country, it remained next to the house, where it was used exclusively for manufacturing methamphetamine. Henry testified that he gave both Defendants methamphetamine for their personal use, and that he gave Cobos some to "get rid of," R., Vol. XI at 317:15. He also testified that he gave Arturo two ounces of methamphetamine made from pseudoephedrine pills paid for by Arturo, and one ounce in lieu of rent. From this, a jury could conclude beyond a reasonable doubt that each Defendant knew that Henry used the trailer to manufacture methamphetamine.

**\*5** With respect to the amount of drugs manufactured, Defendants claim that the government's evidence was insufficient to prove beyond a reasonable doubt that Henry manufactured more than 50 grams of methamphetamine in the trailer. As an initial matter, we are uncertain why Defendants believe that the government was required to prove as an element of the crime that any benchmark amount of methamphetamine was manufactured in the trailer. As discussed above, the district court sentenced them to thirty years' imprisonment, well within the range permitted under 21 U.S.C. § 841(b)(1)(C), as enhanced by 21 U.S.C. § 860(a). Thus, **\*656** the government was not required to charge in the indictment, and prove to the jury beyond a reasonable doubt as an element of the offense, that Henry manufactured a given benchmark amount in the trailer. *See United States v. Jones,* 235 F.3d 1231, 1236 (10th Cir.2000).

Furthermore, even if the government was required to produce evidence that Henry manufactured more than 50 grams of methamphetamine in the trailer, it met this burden. Although Henry's estimates of the total amount of methamphetamine that he manufactured varied during the course of his testimony, all estimates exceeded one pound. He also estimated that in each batch he manufactured between one and three ounces. Because 50 grams is less than two ounces, this testimony clearly sufficed.

As for the distance between the trailer and the school, Agent Eric Brackeen of the Roswell Police Department testified that he used a "roll-a-tape device" to measure the distance. He testified that the trailer was adjacent to the house at 1418 East Tilden Street in Roswell. Starting on the sidewalk to the west of that address, he proceeded east along East Tilden Street to Hinkel Street, then southeast on Hinkel to the sidewalk of Mesa Middle School, and then on to the back door on the northwest side of the school. The distance measured 628 feet, 11 inches. He then "reset the measurement and took it back to see if it was going to be in close proximity and it was about 11 inches off, is all. It was 628 feet from the back of the school door back to the beginning of the residence." R., Vol. XI at 215: 22-25. He also testified that the measurement "as the crow flies" would have been less than 628 feet. From this testimony the jury could conclude beyond a reasonable doubt that the trailer in which Henry manufactured methamphetamine was within 1000 feet of a school.

### C. Ineffective Assistance of Counsel

[3] Finally, Defendants contend that they received ineffective assistance of counsel because their attorneys did not object to the presentence report on which their sentences were based. Defendants argue that they were especially prejudiced by their attorneys' failure to object to the government's evidence of their knowledge that methamphetamine was being manufactured, the distance between the methamphetamine lab and the school, and the quantity of drugs manufactured.

**\*6** As a general rule, "[i]neffective assistance of counsel claims should be brought in collateral proceedings, not on direct appeal. Such claims brought on direct appeal are presumptively dismissible, and virtually all will be dismissed." *United States v. Galloway,* 56 F.3d 1239, 1240 (10th Cir.1995) (en banc). Requiring ineffective assistance claims to be brought on collateral attack allows the district court to create a factual record, if necessary, on the issue of ineffective assistance. It also gives "counsel accused of deficient performance" the opportunity to "explain their reasoning and actions, and the district court can render its opinion on the merits of the claim." *Id.*

We do not depart from the general rule in this case and dismiss this claim as premature.

## III. CONCLUSION

We AFFIRM the judgments in Nos. 02-2222 and 02-2237. The motions to withdraw by Defendants' appellate attorneys are GRANTED. Arturo Natera's motion for appointment of counsel is DENIED. We construe Cobos's reply brief as a motion for appointment of counsel; this motion is also DENIED.

C.A.10 (N.M.),2004.
U.S. v. Cobos
92 Fed.Appx. 650, 2004 WL 296971 (C.A.10 (N.M.))

Briefs and Other Related Documents (Back to top)

• 2003 WL 23696339 (Appellate Brief) Appellant's Opening Brief (Jun. 12, 2003) Original Image of this Document with Appendix (PDF)
• 02-2237 (Docket) (Sep. 09, 2002)
• 02-2222 (Docket) (Sep. 03, 2002)
• 2002 WL 32615160 (Appellate Brief) Appellee's Answer Brief (Jan. 01, 2002) Original Image of this Document (PDF)

END OF DOCUMENT